Bradley J. Dixon, ISB No. 6167
Matthew E. Liebertz, ISB No. 11179
GIVENS PURSLEY LLP
601 W. Bannock
P.O. Box 2720
Boise, Idaho 83701
Telephone: (208) 388-1200
Facsimile: (208) 388-1300
bradleydixon@givenspursley.com
mattliebertz@givenspursley.com
18086755 [15714.1]

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AARON SEEHAWER, an individual; VAN CARLSON, an individual, | CASE NO: _____ |
| Plaintiffs, | |
| vs. | **VERIFIED COMPLAINT** |
| UNITED STATES OF AMERICA, a sovereign government; UNITED STATES CUSTOMS AND BORDER PROTECTION, a governmental entity; | |
| Defendants. | |

## COMPLAINT

Plaintiffs, Aaron Seehawer and Van Carlson, by and through their attorneys of record, Givens Pursley LLP, bring this cause of action, stating their claims against Defendants the United States of America and the United States Customs and Border Protection.

**VERIFIED COMPLAINT - 1**

## PARTIES

1.      At all times relevant herein, Plaintiff Aaron Seehawer ("Seehawer") is an individual residing in Ada County, Idaho.

2.      At all times relevant herein, Plaintiff Van Carlson ("Carlson") is an individual residing in Ada County, Idaho.

3.      At all times relevant hereto, Defendant United States of America ("USA") was a governmental entity that is the real party in interest for, and acting through its agency, the United States Customs and  Border Protection.

4.      Defendant United States Customs and Border Protection ("CBP") is a governmental entity formed under the laws of the United States pursuant to 6 U.S.C. § 211 *et seq.*

5.      At all times relevant hereto, CBP owned and/or operated Willow Creek Port of Entry ("Willow Creek") located at 29942 St. Joe Road, Havre, Montana 59501.

6.      At all times relevant hereto, CBP owned and/or operated Wild Horse Port of Entry ("Wild Horse") located at 29832 Wild Horse Road, Highway 32, Havre, Montana 59501.

7.      At all times relevant hereto, CBP owned and/or operated Area Port of Sweetgrass, Montana ("Sweetgrass") located at 39825 Interstate 15, Sweetgrass, Montana, 59484.

8.      At all times relevant herein, Officer Knudsen was an employee or contractor for CBP acting on behalf of CBP.

9.      At all times relevant herein, Officer Mendelson was an employee or contractor for CBP acting on behalf of CBP.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1346, 1367(a).

**VERIFIED COMPLAINT - 2**

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1402(b).

**FACTUAL ALLEGATIONS**

1.      Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

2.      On or about Friday September 30, 2022, 10:20 MST—Plaintiffs Seehawer and Carlson were driving a rented pickup truck when they arrived at Willow Creek en route to North Battleford, Saskatchewan, Canada, where they had arranged a guided moose and deer hunt. Plaintiffs were met by Officer DeLeon. Seehawer and Carlson were in possession of hunting rifles for the guided hunt. Officer Deleon indicated that she was new to Willow Creek, having recently transferred from Houston, Texas, and established quickly that she was not familiar with the proper process to evaluate the Form 4457 or the firearms. Officer DeLeon entered the building and appeared to speak to a colleague that was in the office. Officer DeLeon did not inspect the firearms, returned the Form 4457 to Seehawer and Carlson and sent them on their way with no inspection of the firearms or signature on the form.

3.      The guided hunts cost Seehawer and Carlson $6,000 each. *See* **Exhibit 1** attached hereto and incorporated herein by reference.

4.      The moose tags were charged separately from the guided hunt and cost Seehawer and Carlson $600 each. Seehawer also obtained a whitetail deer tag for $600.

5.      On or about Sunday, October 2, 2022, Carlson harvested a moose ("Carlson moose") utilizing the moose tag associated with the guided hunt. Carlson had the moose processed with B&D Meats ("B&D") located at 1181 100 Street, North Battleford, Saskatchewan, Canada, because the moose was harvested early in the period of time set aside for the guided hunt and because it could potentially be days before Seehawer was able to harvest a

VERIFIED COMPLAINT - 3

moose, if at all.  Most of the moose harvested by Carlson was processed into ground moose, jerky and pepperoni, while saving only the prime cuts due to more time being available for the full processing while Seehawer expected to harvest a moose.  The processing cost Carlson $800 (Canadian Dollars).  *See* **Exhibit 2** attached hereto and incorporated herein by reference.

6.      On or about Sunday, October 2, 2022, Seehawer harvested a deer utilizing the whitetail deer tag associated with the guided hunt.  Similar to the decision made by Carlson, the deer was processed at B&D and was largely processed into jerky, pepperoni and ground meat. The charge by B&D for this processing was $479.06.  *See* **Exhibit 3** attached hereto and incorporated herein by reference.

7.      On or about Tuesday, October 4, 2022,  Seehawer harvested a moose ("Seehawer moose") utilizing the moose tag associated with the guided hunt.  At this point, because both Carlson and Seehawer had harvested a moose, and due to other obligations, Plaintiffs decided they would return home on October 5, 2022.  As such, the Seehawer moose was "rough processed" and placed in game bags for the return trip.

8.      On or about Wednesday October 5, 2022, Plaintiffs entered Willow Creek around 3:45 p.m. MST.  Plaintiffs were in possession of all of the harvested meat.  Carlson was driving a rental truck and noticed that the entrance to the port was poorly marked, and it was unclear where he needed to stop the vehicle. As a result, Carlson pulled past an orange cone which was, apparently, not the intended stopping point.  At that point, a male officer who is believed to be Officer Mendelson observed that the rental truck had California license plates and commented, "do you not have stop signs in California?"  The condescending tone of the officer caused concern with Plaintiffs, and both of them pointed out that they were from Idaho and not

**VERIFIED COMPLAINT - 4**

California.  Officer Mendelson asked some questions relating to what Plaintiffs were doing in Canada, then he told them to pull around and come into the building.

9.      Officer Mendelson met Carlson and Seehawer at the counter of the CBP Willow Creek building, and they were also introduced to Officer Knudsen.

10.     Seehawer and Carlson assumed the reason for going into the building was to review the Form 4457.  Upon entering the building, they were introduced to Officer Knudsen. Stated simply, Officer Knudsen was rude, unfriendly, unprofessional and immediately hostile upon learning that Plaintiffs had been in Canada on a guided hunt.  Before they handed over the paperwork, Officer Knudsen asked if they had processed any of the meat from the moose and whitetail.  Upon discovering that some of the meat had been processed, Officer Knudsen immediately told them that they would need to leave and go back to Canada.  Seehawer and Carlson were confused with the statement and in shock.   Knowing that this position was legally incorrect, Carlson attempted to explain the situation.  Officer Knudsen, however, was not only unsympathetic, but she acted happy, as though she had "caught" two hunters and could exercise her authority.

11.     Carlson mentioned the cost of the processing, to which Officer Knudsen stated she did not care how much it cost and that they needed to return to Canada.  Still confused and surprised, Carlson indicated that he could not believe the guides would fail to mention something like this and stated that he would be upset if the officers were incorrect.  At that point, Carlson handed the 4457 forms to Officer Mendelson, and Officer Mendelson immediately pointed out that the forms were not signed.  Plaintiffs stated that  Officer DeLeon previously informed Plaintiffs that the forms would be signed upon return.  Officer Mendelson then started to discuss his understanding of the rule and that it was not possible to identify processed meat.  Carlson

**VERIFIED COMPLAINT - 5**

tried to explain the "triple tagging" process, to no avail.  At that point, Officer Knudsen asked Carlson what he planned to do with his phone.  Both officers started to act aggressive with their tone and body language.

12.     At this point, Plaintiffs had no choice but to turn around and proceed back into Canada.  Functionally, two United States citizens who had important business matters to attend to the following day were not being allowed back into the country based on an improper interpretation of current laws and regulations regarding the importation of the moose meat.

13.     While trying to determine what to do, and during their return back to Canada, Seehawer contacted a border patrol officer by the name of Jake Fischer, who is a long-time friend of Seehawer. Mr. Fischer promptly provided names of other border agents to speak with. One of those contacts was Tim Williams. Mr. Williams was very helpful.  Based on the new and additional information that Plaintiffs obtained, they proceeded to the Wild Horse Port.  Plaintiffs arrived at the Wild Horse Port, and the officer indicated that he thought they were having a rough day and suggested that they were "port shopping."  Carlson and Seehawer explained the new information they had, presented the receipts, and the male officer took the receipts and their passports and went into the building.  While waiting, Officer DeLeon appeared and stated that she needed to sign the 4457 forms.  Plaintiffs handed the forms to her, and she signed them.  The male officer then took the receipts and passports and indicated there was nothing he could do, and they needed to go back to Canada. That said, both officers that Plaintiffs encountered at Wild Horse were confused regarding the rules as well.  Plaintiffs were again denied entry.

14.     With no other known options, and needing to return home for important business matters, Plaintiffs asked where they could donate the processed meat such as a food bank. In the interest of not wasting several hundred pounds of highly valuable moose and deer meat,

**VERIFIED COMPLAINT - 6**

Plaintiffs traveled two and a half hours north to Medicine Hat where they attempted to donate the meat to a food bank.  Upon arrival, however, the foodbank was closed.  Again trying not to waste this valuable resource, they called multiple places trying to give away the meat. Because they were advised by Mr. Williams that if they arrived at Sweet Grass in possession of the meat they would be subject to a fine, they were left with no choice but to discard the meat.

15.     As it turned out, Seehawer and Carlson were required to simply leave 575 pounds of moose meat and 150 pounds of whitetail deer meat in a dumpster.

16.     Upon their return to the Sweet Grass Port, Plaintiffs were advised that they had been "red flagged" as a result of multiple entry attempts to ports of entry. At this juncture, the officers that Seehawer and Carlson came into contact with understood that they had been through a lot. The officer expressed frustration with the experience and was more than willing to get them on their way without much further incident.

17.     Plaintiffs researched the U.S. Fish and Wildlife laws and regulations after spending the night in Great Falls, Montana.  Plaintiffs were advised by a U.S. Fish and Wildlife officer that the rule relied upon by Officer Knudsen does not apply to wild game but only ducks and geese.

18.     As a result of the improper conduct and determination by Officer Knudsen, the hunt was ruined, meat was discarded, and significant losses were incurred that were related to the harvesting of two wasted animals.

19.     On November 2, 2022, Plaintiffs filed a Notice of Tort Claim with CBP pursuant to the Federal Tort Claims Act, which was received by CBP.  *See* **Exhibit 4** attached hereto and incorporated herein by reference.

**VERIFIED COMPLAINT - 7**

20.     It has now been six months since CBP's receipt of the Notice of Tort Claim and, to date, Plaintiffs have not received any notification whether Plaintiffs' claim has been denied by the United States Government.

## COUNT I
### (NEGLIGENCE)

21.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

22.     The treatment Seehawer and Carlson received at Willow Creek and Wild Horse was negligent and fell below the standard of care owed to Plaintiffs.  The improper conduct and negligent determination made by Officers Knudsen and/or Mendelson to deny Plaintiffs entry into the United States unless Plaintiffs discarded their processed meat was negligent.

23.     Defendants' negligence was the direct and proximate result of Plaintiffs' economic damages.

24.     At the time of Defendants' negligent conduct, Officers Knudsen and Mendelson were acting within the scope of their employment or contract with CBP.

25.     As a direct and proximate result of Defendants' negligence, Plaintiffs have sustained economic losses, which include, but are not limited to: the costs for Plaintiffs' guided hunts, Carlson's moose tag, Seehawer's deer tag, the processing fee for the Carlson moose, the processing fee for Seehawer's harvested deer, the cost of 575 pounds of discarded moose meat, the cost of 150 pounds of discarded deer meat, hotel costs and personal time costs.  The precise amount of these damages will be proven at the time and place of trial.

//

//

//

**VERIFIED COMPLAINT - 8**

## COSTS AND ATTORNEYS' FEES

Plaintiffs seek an award of their reasonable attorneys' fees and costs incurred in this matter pursuant to 28 U.S.C. § 2678 and Rule 54 of the Federal Rules of Civil Procedure in such amount as this Court may find reasonable at the appropriate time in these proceedings.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Aaron Seehawer and Van Carlson pray for judgment against Defendants as follows:

1.      To find in favor of Plaintiffs and against Defendants on all causes of action in this Verified Complaint and for judgment in favor of Plaintiffs and against Defendants;

2.      For all damages sustained as a direct and proximate result of the wrongful conduct, as referenced above, all in amounts to be proven at the time and place of trial in this action;

3.      An award of Plaintiffs' reasonable attorneys' fees and costs incurred in this matter; and

4.      For such other and further relief as the Court deems just and equitable.

DATED January 12, 2024

GIVENS PURSLEY LLP

*/s/ Bradley J. Dixon*
Bradley J. Dixon
Matthew E. Liebertz
Attorneys for Plaintiffs

**VERIFIED COMPLAINT - 9**

## VERIFICATION

STATE OF IDAHO          )
                        ) ss.
County of _Ada_____   )

AARON SEEHAWER, being duly sworn on oath, deposes and says that he is one of the

Plaintiffs herein and that he has read the within and foregoing Verified Complaint, knows the

contents thereof, and believes the same to be true.

_____
Aaron Seehawer

SUBSCRIBED AND SWORN to before me on __12/20____, 2023.

_____
Notary Public in and for the State of Idaho
Residing at: _5496 N. Forbs Ave Boise ID 83713_
My Commission expires: _5/14/25_

**VERIFIED COMPLAINT - 10**

## VERIFICATION

STATE OF IDAHO               )
                             ) ss.
County of ___Ada___          )

VAN CARLSON, being duly sworn on oath, deposes and says that he is one of the Plaintiffs herein and that he has read the within and foregoing Verified Complaint, knows the contents thereof, and believes the same to be true.

_____
Van Carlson

SUBSCRIBED AND SWORN to before me on ___12 / 2 0 / ___ , 2023.

_____
Notary Public in and for the State of Idaho
Residing at: 5496 N. Forbes Ave, Boise, ID 83713
My Commission expires: 5/14/25

**VERIFIED COMPLAINT - 11**

EXHIBIT 1

# EXHIBIT 1

# TW Outfitters

4810 - 32 Street
Lloydminster, Saskatchewan   S9V 1B3
Canada
info@twoutfitters.ca
Cell: 1-306-307-7735

Client's Name _R. Aaron Seehawer_ Date _12/27/2021_

Phone (_208_) _861-6660_ Extra Phone ( )_____

Street Address _2816 S. Bear Claw Wy_ City _Meridian_

Province/State _ID_ Postal Zip Code _83642_

Date of Hunt _Sept 30, 2022 - Oct 7, 2022_

Type of Hunt **(WHITETAIL DEER)**      **(MULE DEER)**      **(ELK)**      **(MOOSE)**

Method: Tree stands (some enclosed heated), ground blinds, stalking

Closest Airport:  Saskatoon, Saskatchewan, Canada

License to be purchased by hunter:  $600.00 - $800.00 U.S. Funds

Guide Ratio:  1 to 1 or 2 to 1          Meals and Accommodations included

Trophy Harvest Fee per Mule Deer $3000.00 US Funds

*It is recommended that the hunter arrive Saturday or Sunday to prepare for their **6-day** hunt.*

| | |
|---|---|
| **Cost of One Hunt** | **$6000.00  U.S. Funds** |
| **Deposit Required in Advance – NON refundable** | **$3000.00 U.S. Funds** |
| (deposit payable by wire payment, bank draft, certified cheque) | |
| **Balance Due Upon Arrival** | **$3000.00 U.S. Funds** |
| (payable by cash, certified cheque or money order) | |

**Important:**  The hunter agrees to defend and indemnify TW Outfitters and hold TW Outfitters harmless from all claims, losses, actions, damages, personal injury loss, complaints, or expenses connected with this contract and your hunt with TW Outfitters. The Hunter also represents there are no health risks, allergies, heart problems or any other health problems which are not or have not been disclosed to TW Outfitters in writing.  The Hunter further represents they are entitled to carry a firearm in the Province of Saskatchewan, Canada.  Also, there is $1500.00 U.S. Funds fee for harvesting a buck **less** than 140 inch Boone & Crockett score. Final Score to be determined by Guide or Wayne Gopher.  This rule insures that trophy class whitetail bucks are harvested only. Thanks, TW Outfitters

(Your signature below indicates you read and agree with above waiver)

Signature of Hunter_____ Date _12/27/2021_

Signature of Outfitter_____ Date_____



4810 - 32 Street
Lloydminster, Saskatchewan   S9V 1B3
Canada
info@twoutfitters.ca
Cell: 1-306-307-7735

Client's Name _Van Carlson_____ Date _12/28/21_

Phone ( ) _209-870-4219_ Extra Phone ( ) _____

Street Address _5874 N. Black Sand Ave_ City _Meridian_

Province/State _Idaho_ Postal Zip Code _83646_

Date of Hunt _Sept 30th - Oct 7th 2022_

Type of Hunt  **(WHITETAIL DEER)     (MULE DEER)     (ELK)     (MOOSE)**

Method: Tree stands (some enclosed heated), ground blinds, stalking

Closest Airport:  Saskatoon, Saskatchewan, Canada

License to be purchased by hunter:  $600.00 - $800.00 U.S. Funds

Guide Ratio:  1 to 1 or 2 to 1          Meals and Accommodations included

Trophy Harvest Fee per Mule Deer $3000.00 US Funds

*It is recommended that the hunter arrive Saturday or Sunday to prepare for their **6-day** hunt.*

| | |
|---|---|
| Cost of One Hunt | **$6000.00  U.S.  Funds** |
| Deposit Required in Advance – NON refundable | **$3000.00 U.S. Funds** |
| (deposit payable by wire payment, bank draft, certified cheque) | |
| Balance Due Upon Arrival | **$3000.00 U.S. Funds** |
| (payable by cash, certified cheque or money order) | |

**Important:**  The hunter agrees to defend and indemnify TW Outfitters and hold TW Outfitters harmless from all claims, losses, actions, damages, personal injury loss, complaints, or expenses connected with this contract and your hunt with TW Outfitters. The Hunter also represents there are no health risks, allergies, heart problems or any other health problems which are not or have not been disclosed to TW Outfitters in writing.  The Hunter further represents they are entitled to carry a firearm in the Province of Saskatchewan, Canada.  Also, there is $1500.00 U.S. Funds fee for harvesting a buck **less** than 140 inch Boone & Crocket score. Final Score to be determined by Guide or Wayne Gopher.  This rule insures that trophy class whitetail bucks are harvested only. Thanks, TW Outfitters

(Your signature below indicates you read and agree with above waiver)

Signature of Hunter_____ Date_12/28/2021_

Signature of Outfitter_____ Date_____

EXHIBIT 2

# EXHIBIT 2

WHOLESALE ~ RETAIL MEAT

# B & D MEATS 1995 INC

1181 - 100th STREET – PHONE: 445-3430
FAX: 445-3415

NORTH BATTLEFORD, SASK. S9A 0V3      Oct 05/22

NAME  Von Carlson

ADDRESS _____

_____ PHONE _____

| QUANTITY | DESCRIPTION | PRICE | AMOUNT | |
|---|---|---|---|---|
| 443 | Processing | 1.xx | 443 | xx |
| 62 | smokies | 2.75 | 170 | 50 |
| 62 | wrapping | .50 | 31 | xx |
| 8 | Jerky | 10.xx | 80 | xx |
| | | | 724 | xx |
| | | | | |
| | | | 800.xx | |
| | | | | |
| RECEIVED IN GOOD ORDER BY | | G.S.T. | | |
| | | P.S.T. | | |
| | | **TOTAL** | | |

GST # 897858353 RT 0001          2% PER MONTH (24% PER ANNUM)
                                  INTEREST CHARGED ON OVERDUE ACCOUNTS.

23118  179

EXHIBIT 3

# EXHIBIT 3

WHOLESALE – RETAIL MEAT

# B & D MEATS 1995 INC

1181 - 100th STREET – PHONE: 445-3430
FAX: 445-3415

NORTH BATTLEFORD, SASK. S9A 0V3    Oct. 05/22

NAME   Aaron Schaver

ADDRESS

PHONE

| QUANTITY | DESCRIPTION | PRICE | AMOUNT | |
|---|---|---|---|---|
| | Processing | | $100 | xx |
| 75 | Sticks | 3.25 | 243 | 75 |
| 75 | pkging | 1.50 | 37 | 50 |
| | | | 381 | 25 |
| | Push | | 75 | xx |
| | | | 456 | 25 |
| | | | | |
| RECEIVED IN GOOD ORDER BY | | G.S.T. | 22 | 81 |
| | | P.S.T. | | |
| | | **TOTAL** | $479 | 06 |

GST # 897858353 RT 0001

**23117** 179

2% PER MONTH (24% PER ANNUM)
INTEREST CHARGED ON OVERDUE ACCOUNTS

EXHIBIT 4

# EXHIBIT 4



GIVENS PURSLEY LLP
Attorneys and Counselors at Law

601 W. Bannock Street
PO Box 2720
Boise, ID 83701
Main: 208-388-1200
www.givenspursley.com

Bradley J. Dixon
Direct: 208-388-1261
bradleydixon@givenspursley.com

November 2, 2022

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
U.S. Customs and Border Protection
Willow Creek Port of Entry
29942 St. Joe Road
Havre, MT 59501-8072

  Re: Tort Claim

To whom it may concern:

  This narrative is submitted by Givens Pursley LLP, counsel of record for Aaron Seehawer ("Seehawer") and Van Carlson ("Carlson") with respect to certain complaints and damages associated with the Wednesday, October 5, 2022 attempted border crossing by Seehawer and Carlson at the U.S. Customs and Border Protection – Willow Creek Port of Entry ("Willow Creek") located at 29942 St. Joe Rd., Havre, Montana 59501. Seehawer and Carlson are both residents of Meridian, Idaho.

  1. Friday September 30, 2022, 10:20 MST – Seehawer and Carlson were driving a rented pickup truck when they arrived at Willow Creek en route to North Battleford, Saskatchewan, Canada, where they had arranged a guided moose and deer hunt. They were met by Officer DeLeon. Because Seehawer and Carlson were in possession of hunting rifles for the guided hunt, Officer Deleon indicated that she was new to Willow Creek, having recently transferred from Houston, Texas, and established quickly that she was not familiar with the proper process to evaluate the Form 4457 or the firearms. Officer DeLeon entered the building and appeared to speak to a colleague that was in the office. Officer DeLeon did not inspect the firearms, returned the Form 4457 to Seehawer and Carlson, and sent them on their way with no inspection or signature on the form.

  2. The guided hunts cost Seehawer and Carlson $6,000.00 each. *See* attached.

  3. The moose tags were charged separately from the guided hunt and cost Seehawer and Carlson $600.00 each. Seehawer also obtained a whitetail deer tag for $600. *See* attached.

  4. Sunday, October 2, 2022 – Utilizing the moose tag associated with the guided hunt, Carlson harvested a moose. Because the moose was harvested early in the period of time set aside for the guided hunt, and because it could potentially be days before Seehawer was able to harvest a moose, if at all, Carlson made the decision to have the moose he harvested be fully processed with B&D Meats ("B&D") located at 1181 100 St., North Battleford, Saskatchewan, Canada (phone number (306) 445-

U.S. Customs and Border Protection
November 2, 2022
Page 2

3430).  Because there was time for full processing and they expected to harvest a second moose, most of the moose Mr. Carlson harvested was processed into ground moose, jerky, and pepperoni, while saving only the prime cuts.  The processing cost Carlson 800.00 (Canadian Dollars).  *See* attached receipt.

5.      Sunday, October 2, 2022 – Utilizing the whitetail deer tag associated with the guided hunt, Seehawer harvested a deer.  Similar to the decision made with the Carlson moose, the deer was processed at B&D and was largely processed into jerky, pepperoni, and ground meat.  The charge by B&D for this processing was $479.06.  *See* attached receipt.

6.      Tuesday, October 4, 2022 – Utilizing the moose tag associated with the guided hunt, Seehawer harvested a moose.  Because of other obligations and because they had both harvested a moose, Seehawer and Carlson decided they would return home on October 5, 2022.  As such, the moose harvested by Seehawer was rough processed and placed in game bags for the return trip.

7.      Wednesday Oct 5, 2022 – In possession of all of the harvested meat, Seehawer and Carlson entered Willow Creek at about 3:45 p.m. MST. Carlson was driving the rental truck and noticed that entrance to the port was poorly marked, and it was unclear where he needed to stop the vehicle. As a result, Carlson pulled past an orange cone which was not apparently the intended stopping point.  At that point, a male officer who is believed to be Officer Mendelson observed that the rental truck had California license plates and commented, "do you not have stop signs in California?"   The condescending tone of the officer caused concern with Seehawer and Carlson, and both of them pointed out that they were from Idaho and not California.  The male officer asked some questions relating to what Seehawer and Carlson were doing in Canada, then he told them to pull around and come into the building.

8.      Officer Mendelson met Carlson and Seehawer at the counter of the U.S. Custom building, and they were also introduced to Officer Knudsen.

9.      Seehawer and Carlson assumed the reason for going into the building was to review the Form 4457.  Upon entering the building, they were introduced to Officer Knudsen. Stated simply, Officer Knudsen was rude, unfriendly, unprofessional, and immediately hostile upon learning that Seehawer and Carlson had been in Canada on a guided hunt.  Before they handed over the paperwork, Officer Knudsen asked if they had processed any of the meat from the moose and whitetail.  Upon discovering that some of the meat had been processed, Officer Knudsen immediately told them that they would need to leave and go back to Canada.  Seehawer and Carlson were confused with the statement and in shock.   Knowing that this position was legally incorrect, Carlson attempted to explain the situation.  Officer Knudsen, however, was not only unsympathetic, but she acted happy, as though she had "caught" two hunters and could exercise her authority.

10.     Carlson mentioned the cost of the processing, to which Officer Knudsen stated she did not care how much it cost and that they needed to return to Canada.  Still confused and surprised, Carlson indicated that he could not believe the guides would fail to mention something like this and stated that he would be upset if the officers were incorrect.  At that point, Carlson handed the 4457 forms to the male officer, and he immediately pointed out that the forms were not signed.  Seehawer and Carlson stated that  Officer DeLeon previously stated that the forms would be signed upon return.  The male officer then started to discuss his understanding of the rule and that it was not possible to identify processed meat.  Carlson tried to explain the triple tagging process, to no avail.  At that

U.S. Customs and Border Protection
November 2, 2022
Page 3

point, Officer Knudsen asked Carlson what he planned to do with his phone.  Both officers started to act aggressive with their tone and body language.

11.     At this point, Seehawer and Carlson had no choice but to turn around and proceed back into Canada.  Functionally, two United States itizens who had important business matters to attend to the following day were not being allowed back into the country based on an improper interpretation of current laws and regulations regarding the importation of the moose meat.

12.     While trying to determine what to do, and during their return back to Canada, Seehawer contacted a border patrol officer by the name of Jake Fischer, who is a long-time friend of Seehawer. Mr. Fischer promptly provided names of other border agents to speak with. One of those contacts was Tim Williams. Mr. Williams was very helpful.  Based on the new and additional information that Seehawer and Carlson obtained, they proceeded to the Wild Horse Port.  Seehawer and Carlson arrived at the Wild Horse Port, and the officer indicated that he thought they were having a rough day and suggested that they were "port shopping."  Carlson and Seehawer explained the new information they had, presented the receipts, and the male officer took the receipts and their passports and went into the building.  While waiting, Officer DeLeon appeared and stated that she needed to sign the 4457 forms.  Carlson and Seehawer handed the forms to her, and she signed them.  The male officer that took the receipts and passports returned and indicated there was nothing he could do, and they needed to go back to Canada.  That said, both officers that Seehawer and Carlson encountered at Wild Horse were confused regarding the rules as well.  Seehawer and Carlson were again denied entry.

13.     With no other options, and needing to return home for important business matters, Seehawer and Carlson asked where they could donate the processed meat such as a food bank. In the interest of not wasting several hundred pounds of highly valuable moose and deer meat, Seehawer and Carlson traveled two and a half hours north to Medicine Hat where they attempted to donate the meat to a food bank.  Upon arrival, however, the foodbank was closed.  Again trying not to waste this valuable resource, they called multiple places trying to give away the meat. Because they were advised by Mr. Williams that if they arrived at Sweet Grass in possession of the meat they would be subject to a fine, they were left with no choice but to discard the meat.

14.     As it turned out, Seehawer and Carlson were required to simply leave 575 pounds of moose meat and 150 pounds of whitetail deer meat in a dumpster.

15.     Upon Seehawer and Carlson's return to the Sweet Grass port, they were advised that they had been "red flagged" as a result of multiple entry attempts to ports of entry. At this juncture, the officers that Seehawer and Carlson came into contact with understood that they had been through a lot. The officer expressed frustration with the experience and was more than willing to get them on their way without much further incident.

16.     Seehawer and Carlson researched the U.S. Fish and Wildlife laws and regulations after spending the night in Great Falls, Montana.  Irene Jorda of USFW advised that the rule relied upon by Officer Knudsen does not apply to wild game but only ducks and geese.

17.     As a result of the improper conduct and determination by Officer Knudsen, the hunt was ruined, meat was discarded, and significant losses were incurred that were related to the harvesting of two wasted animals.

U.S. Customs and Border Protection
November 2, 2022
Page 4

18.      Damages are as follows:

a.      Guided Hunt - $6,000 (Carlson)

b.      Guided Hunt - $6,000 (Seehawer)

c.      Moose Tag - $600 (Carlson)

d.      Whitetail Deer Tag - $600 (Seehawer)

e.      Moose Processing - $800 (Carlson)

f.      Whitetail Deer Processing - $479 (Seehawer)

g.      575 Pounds of Moose Meat Loss - $23,000 ($40/pound) (Carlson)

h.      150 Pounds of Deer Meat Loss - $14,000 ($20/pound) (Seehawer)

i.      Hotel Expense - September 29 - $198.50

j.      Hotel Expense - October 5 - $174.72

k.      Five Hours of Lost Time Searching for Donation Opportunity - $2,500 ($500/hour)

l.      Legal Fees - $3,500

**Grand Total**          **$57,852.22**

Sincerely,

Bradley J. Dixon

/BJD
Enclosures
cc:      Client
16474007_1.docx [15714.1]



# TW Outfitters

4810 - 32 Street
Lloydminster, Saskatchewan   S9V 1B3
Canada
info@twoutfitters.ca
Cell: 1-306-307-7735

Client's Name _Van Carlson_____ Date _12/28/21_

Phone ( ) _209-870-4219_____ Extra Phone ( )_____

Street Address _5874 N. Black Sand Ave_ City _Meridian_____

Province/State _Idaho_____ Postal Zip Code _83646_____

Date of Hunt _Sept 30th - Oct 7th 2022_____

Type of Hunt  (**WHITETAIL DEER**)    (**MULE DEER**)    (**ELK**)    (**MOOSE**)

Method: Tree stands (some enclosed heated), ground blinds, stalking

Closest Airport:  Saskatoon, Saskatchewan, Canada

License to be purchased by hunter:  $600.00 - $800.00 U.S. Funds

Guide Ratio:  1 to 1 or 2 to 1         Meals and Accommodations included

Trophy Harvest Fee per Mule Deer $3000.00 US Funds

*It is recommended that the hunter arrive Saturday or Sunday to prepare for their **6-day** hunt.*

Cost of One Hunt                                                              **$6000.00 U.S. Funds**

Deposit Required in Advance – NON refundable                **$3000.00 U.S. Funds**

(deposit payable by wire payment, bank draft, certified cheque)

Balance Due Upon Arrival                                               **$3000.00 U.S. Funds**

(payable by cash, certified cheque or money order)

**Important:**  The hunter agrees to defend and indemnify TW Outfitters and hold TW Outfitters harmless from all claims, losses, actions, damages, personal injury loss, complaints, or expenses connected with this contract and your hunt with TW Outfitters. The Hunter also represents there are no health risks, allergies, heart problems or any other health problems which are not or have not been disclosed to TW Outfitters in writing.  The Hunter further represents they are entitled to carry a firearm in the Province of Saskatchewan, Canada.  Also, there is $1500.00 U.S. Funds fee for harvesting a buck **less** than 140 inch Boone & Crocket score. Final Score to be determined by Guide or Wayne Gopher.  This rule insures that trophy class whitetail bucks are harvested only. Thanks, TW Outfitters

(Your signature below indicates you read and agree with above waiver)

Signature of Hunter_____ Date_12/28/2021_

Signature of Outfitter_____ Date_____

# TW Outfitters

4810 - 32 Street
Lloydminster, Saskatchewan   S9V 1B3
Canada
info@twoutfitters.ca
Cell: 1-306-307-7735

Client's Name _R. Aaron Seehawer_ Date _12/27/2021_

Phone (__) _861-6660_ Extra Phone ( ) _____

Street Address _2816 S. Bear Claw Wy_ City _Meridian_

Province/State _ID_ Postal Zip Code _83642_

Date of Hunt _Sept 30, 2022 - Oct 7, 2022_

Type of Hunt **(WHITETAIL DEER)     (MULE DEER)     (ELK)     (MOOSE)**

Method: Tree stands (some enclosed heated), ground blinds, stalking

Closest Airport: **Saskatoon, Saskatchewan, Canada**

License to be purchased by hunter: **$600.00 - $800.00 U.S. Funds**

Guide Ratio: 1 to 1 or 2 to 1          Meals and Accommodations included

Trophy Harvest Fee per Mule Deer $3000.00 US Funds

*It is recommended that the hunter arrive Saturday or Sunday to prepare for their **6-day** hunt.*

| | |
|---|---|
| **Cost of One Hunt** | **$6000.00 U.S. Funds** |
| **Deposit Required in Advance – NON refundable** | **$3000.00 U.S. Funds** |
| (deposit payable by wire payment, bank draft, certified cheque) | |
| **Balance Due Upon Arrival** | **$3000.00 U.S. Funds** |
| (payable by cash, certified cheque or money order) | |

**Important:**  The hunter agrees to defend and indemnify TW Outfitters and hold TW Outfitters harmless from all claims, losses, actions, damages, personal injury loss, complaints, or expenses connected with this contract and your hunt with TW Outfitters. The Hunter also represents there are no health risks, allergies, heart problems or any other health problems which are not or have not been disclosed to TW Outfitters in writing.  The Hunter further represents they are entitled to carry a firearm in the Province of Saskatchewan, Canada.  Also, there is $1500.00 U.S. Funds fee for harvesting a buck **less** than 140 inch Boone & Crocket score. Final Score to be determined by Guide or Wayne Gopher.  This rule insures that trophy class whitetail bucks are harvested only. Thanks, TW Outfitters

(Your signature below indicates you read and agree with above waiver)

Signature of Hunter _____ Date _12/27/2021_

Signature of Outfitter_____ Date_____



WHOLESALE – RETAIL MEAT

# B & D MEATS 1995 INC

1181 - 100th STREET – PHONE: 445-3430
FAX: 445-3415

NORTH BATTLEFORD, SASK. S9A 0V3   Oct 05/22

NAME   Van Carlsen

ADDRESS

PHONE

| QUANTITY | DESCRIPTION | PRICE | AMOUNT | |
|----------|-------------|-------|--------|---|
| 443 | Processing | 1.xx | 443 | xx |
| 62 | smokies | 2.75 | 170 | 50 |
| 62 | wrapping | .50 | 31 | xx |
| 84 | Jerky | 10.xx | 840 | xx |
| | | | 724 | xx |
| | Rx5L | | 800.xx | |
| RECEIVED IN GOOD ORDER BY | | G.S.T. | | |
| | | P.S.T. | | |
| | | **TOTAL** | | |

GST # 897858353 RT 0001        2% PER MONTH (24% PER ANNUM)
INTEREST CHARGED ON OVERDUE ACCOUNTS.

23118  179

WHOLESALE – RETAIL MEAT

# B & D MEATS 1995 INC

1181 - 100th STREET – PHONE: 445-3430
FAX: 445-3415

NORTH BATTLEFORD, SASK. S9A 0V3        Oct. 05/22

NAME  Aaron Schauer

ADDRESS _____

PHONE _____

| QUANTITY | DESCRIPTION | PRICE | AMOUNT | |
|----------|-------------|-------|--------|---|
| | Processing | | $100 | xx |
| 75 | Sticks | 3.25 | 243 | 75 |
| 75 | pkging | 50 | 37 | 50 |
| | | | 381 | 25 |
| | push | | 75 | xx |
| | | | 456 | 25 |
| | | | | |
| RECEIVED IN GOOD ORDER BY | | G.S.T. | 22 | 81 |
| | | P.S.T. | | |
| | | **TOTAL** | $479 | 06 |

GST # 897858353 RT 0001

23117 179

2% PER MONTH (24% PER ANNUM)
INTEREST CHARGED ON OVERDUE ACCOUNTS