UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AARON SEEHAWER and VAN CARLSON,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA and UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | Case No. 1:24-cv-00018-REP<br><br><br><br>MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS |

Pending before the Court is Defendants' Motion to Dismiss (Dkt. 6). All parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. Dkt. 10. Because Plaintiffs have failed to establish that a private party acting like the United States could be held liable under Montana tort law, the Court will grant Defendants' Motion to Dismiss.

## BACKGROUND

This lawsuit arises out of Plaintiffs Aaron Seehawer's and Van Carlson's attempt to import game meat into the United States. *See generally* Compl. (Dkt. 1). In September 2022, Plaintiffs traveled to Canada for a guided hunt. *Id.* at p. 2, ¶ 2. During the hunt, Plaintiffs killed two moose and one deer. *Id.* at pp. 3-4, ¶¶ 5-7. Plaintiffs processed one of the moose and the deer into ground meat, jerky, and pepperoni. The remaining moose was "rough" processed and placed in game bags. *Id.*

On October 5, 2022, Plaintiffs attempted to return to the United States with the meat. *Id.* at p. 4, ¶ 8. Plaintiffs entered the country at the Willow Creek port of entry, which is located near Havre, Montana. *Id.* at p. 2, ¶ 5 and p. 4 ¶ 8. At the port, Plaintiffs met with U.S. Customs

**MEMORANDUM DECISION AND ORDER – PAGE 1**

and Border Protection ("CBP") Officer Knudsen. *Id.* at p. 5, ¶¶ 9-11. Plaintiffs allege that before they handed Officer Knudsen any paperwork, she asked them if they had processed the meat. *Id.* Plaintiffs answered in the affirmative. Officer Knudsen immediately told them they would need to leave the port of entry and return to Canada. *Id.* Plaintiffs protested and another Officer started discussing the rules for importing meat and claimed that "it was not possible to identify processed meat." *Id.*[1]

Plaintiffs, accordingly, left the Willow Creek port of entry and drove to the Wild Horse port of entry, which is also located in Montana. *Id.* at p. 2, ¶ 6 and p. 6, ¶¶ 12-13. At the Wild Horse port of entry, CBP Officers again denied Plaintiffs' entry into the United States. *Id.* at p. 6, ¶ 13. Anxious to return home, Plaintiffs decided to abandon their importation efforts. They tried to find a food bank where they could donate the meat but were unsuccessful and eventually threw the meat away in a dumpster in Canada. *Id.* at p. 6-7, ¶ 14. Once they had disposed of the meat, they were permitted to return to the United States. *Id.* at p. 7, ¶ 16.

On January 12, 2024, Plaintiffs filed this lawsuit. *See generally* Compl. (Dkt. 1). The complaint alleges that CBP Officers negligently refused to allow them to bring their game meat into the country contrary to U.S. Fish and Wildlife Service ("FWS") regulations. *Id.*

## LEGAL STANDARD

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Sovereign immunity is "quasi-jurisdictional in nature" and may be raised in a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).

---

[1] Under applicable federal regulations, a CBP officer may refuse clearance of imported wildlife where the officer has "responsible grounds to believe that . . . [t]he correct identity . . . of the wildlife has not been established . . . ." 50 C.F.R. § 14.53(b).

An assertion of sovereign immunity under Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted). In a facial attack, the challenger asserts that the pleadings fail to establish subject matter jurisdiction on their face. In a factual attack, by contrast, the challenger introduces extrinsic evidence that calls jurisdiction into question. *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). With respect to a facial attack, like the one raised here, the court presumes the allegations in the complaint are true and construes them in the light most favorable to the plaintiff. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

## THE FTCA

The Federal Tort Claims Act (the "FTCA") provides a limited waiver of the United States' sovereign immunity for certain torts committed by governmental employees. 28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674. To establish jurisdiction under the FTCA, a plaintiff must show that show that a private individual acting like the United States would be liable under the law of the state where the tort was committed. *See Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992). This is commonly referred to as identifying a "private person analog." *See, e.g.*, *Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1303 (9th Cir. 2013). To pass muster, a private person analog need not be perfect. *Xue Lu v. Powell*, 621 F.3d 944, 947 (9th Cir. 2010). The federal government can "never be exactly like a private actor." *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016). A plaintiff's burden is simply to find a "reasonable" or "persuasive" analogy. *Id.*

## DISCUSSION

Plaintiffs offer three theories of liability to satisfy the private person analog requirement. None are efficacious.

**MEMORANDUM DECISION AND ORDER – PAGE 3**

A. <u>Negligence Resulting in Property Damage</u>

Plaintiffs' primary argument is that they can pursue claims against the United States for negligently failing to adhere to wildlife importation regulations because a private person who negligently causes property damage may be held liable under state law. Pl's Rsp at 17-18 (Dkt. 11). Multiple Ninth Circuit cases foreclose this argument.

In *Westbay*, for example, the plaintiff sued the United States for negligently awarding a government contract without requiring an adequate surety bond as required by federal statute. *Westbay*, 970 F.2d at 649-650. The Ninth Circuit held that this was not an actionable theory of relief under the FTCA. In reaching this conclusion, the Court stressed that "FTCA liability does not extend to all 'violations' of statutes and regulations." *Id.* at 650. "Merely alleging negligence," consequently, is not sufficient to establish a "persuasive analogy with private conduct." *Id.*

The Ninth Circuit has reaffirmed this reasoning over the years. In *Lutz v. United States*, 685 F.2d 1178, 1183 (9th Cir. 1982), to take another example, a plaintiff whose child was seriously injured by dog bites argued that the government could be held liable for the dog owner's failure to follow a United States Air Force regulation regarding animal control. *Id.* at 1183-1184. The Ninth Circuit explained that "any duty that the United States owed to [the victim] [could not] be founded" in the regulation; "its source must be Montana law." *Id.* at 1184. As a result, "[t]he federal statute or regulation under which the employee acted only [became] pertinent [once] a state law duty [was] found to exist." *Id.*

These cases, and others like them, teach that "[t]he breach of a duty created by federal law is not, by itself, actionable under the FTCA." *Love v. United States*, 60 F.3d 642, 644 (9th Cir. 1995); *see also Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1303 (9th Cir.

**MEMORANDUM DECISION AND ORDER – PAGE 4**

2013) (FTCA liability must stem from state, not federal law) and *Jachetta v. United States*, 653 F.3d 898, 904 (9th Cir. 2011) (same).  In other words, accusing the government of negligently failing to follow its own laws and rules, as Plaintiffs do here, is not enough to survive review.  *Westbay*, 970 F.2d at 650.  Plaintiffs must identify an analogous state law duty of care*.  Id.*

Plaintiffs have not satisfied this burden.  At the August 6, 2024 motion hearing, Plaintiffs' counsel posited a hypothetical: a concert-goer buys a ticket to a concert, but is refused entry to the concert when a private security guard negligently concludes that the ticketholder cannot bring prescription medication into the venue.  The Court agrees that this is an apt analogy.  The problem is that Plaintiffs have not identified any authority to support their assertion that a private security guard could be held liable under Montana tort law for negligently refusing entry in these circumstances.

The Court is skeptical that such law exists.  As government counsel pointed out, disputes over the right to enter someone else's property normally sound in contract or property law.  The Court is not aware of any tort law imposing a duty on private property owners or their agents to act reasonably when permitting or denying entry to their premises.  The absence of such law is fatal to Plaintiffs' analogy.  *See Delta Sav. Bank v. United States*, 265 F.3d 1017, 1025-1026 (9th Cir. 2001) (explaining that to bring suit under the FTCA, "a duty must be identified, and this duty cannot spring from federal law[;] [t]he duty must arise from state statutory or decisional law.");  *see also Diamond V. Corp. v. Buckhorn Energy Oaks Disposal Servs.*, LLC, 2023 MT 186N, P7 (Montana 2023) (the party alleging negligence must prove that the defendant owed that party a duty of care).

**MEMORANDUM DECISION AND ORDER – PAGE 5**

B.  "Good Samaritan" Liability

At oral argument, Plaintiffs asked the Court to consider "Good Samaritan" liability as an alternative private person analog in the event the Court rejected Plaintiffs' arguments about negligence writ large.

The Supreme Court has long recognized that state "Good Samaritan" common law, which imposes tort liability on private parties who "undertake[] to warn the public of danger and thereby induce[] reliance," can justify a FTCA lawsuit.  *See United States v. Olson*, 546 U.S. 43 (2005) and *Indian Towing Co. v. United States*, 350 U.S. 61 (1955).  In *Indian Towing*, for instance, the Supreme Court held that the government could be held liable under the FTCA for negligently operating a lighthouse.  *Indian Towing*, 350 U.S. at 69.  Similarly, in *Olson*, the government conceded, and the Supreme Court agreed, that Good Samaritan liability allowed the plaintiffs to challenge the actions of federal mine inspectors.  *Olson*, 546 U.S. at 47-48.

To determine whether "Good Samaritan" law is an appropriate private person analogy in any particular case, the Court must look to the law of the state where the tort occurred.  *Schwarder v. United States*, 974 F.2d 1118, 1122 (9th Cir. 1992) ("the FTCA directs us to look to the law of the state in which the government official committed the tort to determine the scope of sovereign immunity"); *see also Tekle v. United States*, 511 F.3d 839, 853 (9th Cir. 2007) (looking to California law to determine whether the government could be sued).

Like most states, Montana recognizes the "Good Samaritan" doctrine of negligence as set forth in the Restatement (Second) of Torts.  *See Md. Cas. Co. v. Asbestos Claims Court*, 2020 MT 70, P32, P35 (Montana 2020) and *Nelson v. Driscoll*, 1999 MT 193, P37 (Montana 1999).  There are two iterations of this doctrine: a two-person scenario and a three-person scenario.  The two-person scenario applies where the defendant undertakes to render services to another person,

**MEMORANDUM DECISION AND ORDER – PAGE 6**

which are "necessary for the protection of the other's person or things." Restatement of Torts, Second, § 323. The three-person scenario applies where the defendant undertakes to render services to another person, which "he should recognize as necessary for the protection of a third person or his things." Restatement of Torts, Second, § 324A.

Neither scenario is applicable here. Plaintiffs were the targets, not the intended or third-party beneficiaries, of the CBP border inspection. They cannot, consequently, bring a claim against the United States under § 323 or § 324A. *See Jeffries v. United States*, 477 F.2d 52, 55 (9th Cir. 1973) (because the government's safety inspections were not undertaken to protect Plaintiffs – workers at a construction site – the United States could not be held liable under a Good Samaritan theory); *see also Roberson v. United States*, 382 F.2d 714, 721 (9th Cir. 1967) (same).

At oral argument, Plaintiffs' counsel attempted to sidestep this conclusion by arguing that border inspections are intended to benefit all United States citizens, Plaintiffs included. While this is a creative argument, it does not pass commonsense scrutiny. Border inspections are designed to impede, not aid, importers. *See United States v. Flores-Montano*, 541 U.S. 149, 153 (2004) (the United States, as sovereign, has the inherent authority to protect its borders, including "preventing the entry of unwanted persons and effects"). In refusing Plaintiffs entry, the United States was not seeking to aid Plaintiffs; it was treating them as a threat to national safety and security. The fact that Plaintiffs have been the beneficiaries of countless other border inspections is immaterial. *See* Restatement of Torts, Second, § 323 (explaining that a "Good Samaritan" has no duty to continuing to render aid and "may normally abandon his efforts at any time").

The question is whether the border inspection at issue here was undertaken to protect Plaintiffs or their property, either directly or indirectly as third-party beneficiaries. *See* Restatement of Torts, Second, §§ 323 and 324A. Because the inspection at issue was not undertaken to protect Plaintiffs, the United States cannot be held liable under a Good Samaritan theory. *Jeffries*, 477 F.2d at 55.

### C. Conversion and Trespass to Chattels

In a final attempt to resuscitate their lawsuit, Plaintiffs argue that, if their negligence claim fails, they should be permitted to amend the complaint to add claims for conversion and trespass to chattels. Plaintiffs, however, make little effort to show that a private person could be held liable in Montana for conversion or trespass to chattels based on a verbal refusal to permit goods to enter private property. This is just as fatal to Plaintiffs' claims for conversion and trespass to chattels as it was to their claim of negligence.

"To establish subject matter jurisdiction under the FTCA, [P]laintiffs must show that a private individual under like circumstances would be liable under state law." *See United States v. Muniz*, 374 U.S. 150, 153 (1963) (citation omitted). Here, Plaintiffs have not identified, and the Court could not locate, any Montana law holding a private individual liable for conversion or trespass to chattels in circumstances like these (*e.g.*, in circumstances like Plaintiffs' concert analogy). The Court doubts any such law exists.

To begin, the Restatement (Second) of Torts, which Montana has generally followed, does not support imposing liability for conversion on a defendant who refuses to permit goods to enter onto private property that is lawfully secured by that party. To illustrate what constitutes conversion, the Restatement provides this hypothetical:

> A takes possession of a house and finds B's furniture in it. A removes the
> furniture to a storage warehouse, stores it in the name of B, and notifies B that he

may come and get it. This is not a conversion.

Restatement of Torts, Second, § 222A, Illustration No. 5. A refusal to allow entry onto private property, like the one at issue here, however, is even less invasive and cannot, consequently be deemed a conversion under the reasoning of the Restatement.[2]

Turning to trespass to chattels, the Restatement identifies two "ways" of committing trespass to chattel: (i) dispossessing another of the chattel or (ii) using or intermeddling with a chattel in the possession of another. Restatement of Torts, Second, § 217. Plaintiffs claim that Officer Knudsen dispossessed them of their game meat. Pl.'s Rsp. at 20 (Dkt. 11). This argument does not hold water. Dispossession requires more than "merely depriving the possessor of a chattel of a particular use of [the chattel]." Restatement of Torts, Second, § 221, Comment e. Contrary to Plaintiffs' claim, the CBP Officers with whom they interacted did not "force" them to destroy the meat; the Officers simply refused to allow Plaintiffs to bring their game meat into the country. Once this decision had been made, Plaintiffs remained free to store the meat, use it, sell it, or dispose of it in Canada, where they had obtained it. In other words, it was Plaintiffs' choice, not the government's choice, to discard the meat. Plaintiffs identify no case law finding that a decision of this kind rises to the level of dispossession.

Nor do Plaintiffs present any argument that a refusal of entry onto private property can be considered intermeddling. According to the restatement, intermeddling means "intentionally bringing about a physical contact with [a] chattel." Restatement of Torts, Second, § 217, Comment e. As Plaintiffs recognize, a defendant can only be held liable for intermeddling if (i)

---

[2] A second illustration indicates that the removal of another's property can rise to the level of conversion when the removal is performed in a manner that subjects the property owner to "great inconvenience and expense in recovering" the property. Restatement of Torts, Second, § 222A, Illustration No. 6. With a refusal of entry, however, the property owner retains possession of the property and cannot claim conversion based on the need to expend funds to recover the property.

**MEMORANDUM DECISION AND ORDER – PAGE 9**

the chattel is impaired as to its condition, quality, or value, (ii) the possessor is deprived of the use of the chattel for a substantial time, or (iii) bodily harm is caused to the possessor, or harm is caused to some person or thing in which the possessor has a legally protected interest. Restatement of Torts, Second, § 218. For example:

> A leaves his car parked in front of a store. B releases the brake on A's car and pushes it three or four feet, doing no harm to the car. B is not liable to A [for trespass to chattels].

*Id.* § 218, Illustration 3. Here, the government required Plaintiffs to drive their meat from the port of entry back to Canada. Plaintiffs, however, have presented no evidence or argument that this short drive impaired the condition or quality of the meat. Even if they had, the Restatement is clear that landowners are permitted to intermeddle with another's property to prevent the entry of that property onto their land. Restatement of Torts, Second, § 260, Comment b ("when it is necessary to avoid or terminate a trespass upon land by a chattel in the possession of another, a person in possession of the land may employ reasonable force to remove the chattel, and he is not liable to the possessor of the chattel, nor to one entitled to its immediate or future possession, for any harm to the chattel necessarily or accidentally resulting"). Taken together, these principles foreclose Plaintiffs' claim for trespass to chattels.

Plaintiffs' argument to the contrary all rest on the unsupported assumption that their ownership of the meat gave them an unqualified right to import the meat into the United States against wishes of the CBP Officers tasked with securing the border. This is simply not the case. *See Flores-Montano*, 541 U.S. 149, 153 (2004) (as sovereign, the United States enjoys the inherent authority to prevent "the entry of unwanted persons and effects" in the country) and *United States v. Ramsey*, 431 U.S. 606, 616 (1977) (recognizing the United States' "longstanding" right to control "who and what may enter the country" and "to protect itself by

**MEMORANDUM DECISION AND ORDER – PAGE 10**

stopping and examining persons and property crossing into this country"). The government's exercise of this authority is entitled to the same protection as that of a Montana private property owner guarding his or her land against an unwanted entry.

FTCA case law from around the country supports this conclusion. In every FTCA case the Court could find challenging the government's immigration or importation decisions, the plaintiffs failed to identify viable private person analogs. *See Obaydul Hoque Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) (unpublished) ("there is, as a general matter, no private analogue to governmental withdrawal of immigration benefits"); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) (unpublished) ("because no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well"); *PW Arms, Inc. v. United States*, 186 F. Supp. 3d 1137, 1143 (W.D. Wash 2016) (finding that there was "no reasonable private analogue" to "restricting and permitting various imports into the United States"); and *Appleton v. United States*, 180 F. Supp. 2d 177, 185 (D.D.C. 2002) ("[r]eviewing applications for the purpose of determining whether the applicant is authorized to import ammunition is . . . without any private counterpart"). Plaintiffs' claims of conversion and trespass to chattel fare no better.

## CONCLUSION

When screening an FTCA claim, a court's "job" is to find "the most reasonable" private person analogy. *Dugard*, 835 F.3d at 919. Having thought long and hard about this case, the Court agrees with Plaintiffs that the most reasonable analogy to CBP's conduct is that of private security guards controlling entry onto private property. Because Plaintiffs have not identified any Montana tort law allowing such individuals to be held liable for a refusal of entry, the Court must dismiss Plaintiffs' lawsuit.

## **ORDER**

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Dkt. 6) is GRANTED.

DATED: August 20, 2024

Raymond E. Patricco
Chief U.S. Magistrate Judge